UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRIAN VICTORY,

       Petitioner,

v.                                     CASE NO. 6:10-cv-1192-Orl-36KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

       Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254.

Upon consideration of the petition (Doc. No. 1), the Court ordered Respondents to show

cause why the relief sought should not be granted.  Thereafter, Respondents filed a

response to the petition for writ of habeas corpus and a supplemental response to the

petition (Doc. Nos. 15, 19).  Petitioner filed a reply to the response (Doc. No. 22).

Petitioner alleges nine claims for relief. For the following reasons, the petition is

denied.

### I.    *Procedural History*

Petitioner was charged by information with two counts of capital sexual battery.  A

jury found Petitioner not guilty of count one but guilty of count two.  The trial court

sentenced Petitioner to the mandatory sentence of life in prison.  Petitioner appealed.  The

Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a).  The state court denied the motion.  Petitioner appealed, and the Fifth District Court of Appeal of Florida dismissed the appeal.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which he moved to amend.  The state court denied the claims raised in the motions.  Petitioner filed a motion for rehearing, and the state court granted the motion to allow Petitioner to sufficiently refile certain claims.  Petitioner filed a subsequent Rule 3.850 motion, and the state court denied the motion. Petitioner appealed. The Fifth District Court of Appeal of Florida affirmed in part and remanded the case for an evidentiary hearing on one claim.

On remand, the state court conducted an evidentiary hearing.  The state court subsequently denied Petitioner's claim.  Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

## II.   *Legal Standards*

### A.   *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable
>          determination of the facts in light of the evidence presented in the
>          State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court

decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions;

the 'contrary to' and 'unreasonable application' clauses articulate independent

considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d

1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh

Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by [the United States
> Supreme Court] on a question of law or if the state court decides a case
> differently than [the United States Supreme Court] has on a set of materially
> indistinguishable facts.   Under the 'unreasonable application' clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from [the United States Supreme Court's] decisions
> but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly,

habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the

state court's decision "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."   A determination of a factual issue

made by a state court, however, shall be presumed correct, and the habeas petitioner shall

3

have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.    Standard for Ineffective Assistance of Counsel

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III.    *Analysis*

A.    *Claims One, Seven, Eight, and Nine*

In claim one, Petitioner asserts that the trial court violated his Sixth and Fourteenth Amendment rights by denying his motion for a new trial based on juror misconduct.  In claim seven, Petitioner contends that the trial court erred by denying his motion to exclude the hearsay statements of the child victim.  In claim eight, Petitioner maintains that the trial court erred by excluding testimony that the child victim was removed from her mother's custody by the Department of Children and Families.  In claim nine, Petitioner alleges that the trial court erred by excluding testimony that the victim and her brother had been observed simulating sexual conduct.  Respondents maintain that these claims are procedurally barred from review because they were not raised as federal claims in the state court.

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526

U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Specifically, the AEDPA

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it
> appears that–
>
> (A)   the applicant has exhausted the remedies available in the courts
>       of the State; or
>
> (B)   (i)   there is an absence of available State corrective process;
>             or
>
>       (ii)  circumstances exist that render such process ineffective
>             to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been

denied on adequate and independent procedural grounds under state law.  *Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

In addition, a federal habeas court is precluded from considering claims that are not

exhausted but would clearly be barred if returned to state court.  *Id.* at 735 n.1 (stating that

if the petitioner failed to exhaust state remedies and the court to which the petitioner would

be required to present his claims in order to meet the exhaustion requirement would now

find the claims procedurally barred, there is a procedural default for federal habeas

purposes regardless of the decision of the last state court to which the petitioner actually

presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly

presen[t] federal claims to the state courts in order to give the State the opportunity to pass

6

upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted

in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

Petitioner raised claims one, seven, eight, and nine on direct appeal.  Petitioner, however, did not assert that the trial court's evidentiary rulings resulted in constitutional violations.  Claims one, seven, eight, and nine, therefore, were not exhausted in the state courts.  Absent an exception to the procedural default bar, these claims are barred from review by this Court.

Petitioner has not shown either cause or prejudice to overcome the procedural default.  Furthermore, Petitioner has not demonstrated that he is actually innocent.  Accordingly, claims one, seven, eight, and nine are procedurally barred from review.

Alternatively, Petitioner has not established that the state court's evidentiary rulings violated his constitutional rights.  In considering a claim based on a state court evidentiary ruling, the Eleventh Circuit has explained:

> We review state court evidentiary rulings on a petition for habeas corpus to determine only whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial. Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a crucial, critical, highly significant factor in the [defendant's] conviction.

*Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir. 1992) (internal quotation marks and citations omitted).

Petitioner has not demonstrated that the state court's evidentiary rulings were contrary to clearly established federal law.  Furthermore, even assuming that the evidence discussed in claims one, seven, eight, or nine was improperly admitted or excluded, the evidence before the jury included the victim's testimony that Petitioner placed his finger inside her vagina, as well as a nurse practitioner's testimony that the scars inside the victim's vagina were consistent with the victim's allegations. Thus, even assuming the admission or exclusion of any of this evidence was erroneous, it was not a crucial, critical, highly significant factor in Petitioner's conviction.  Accordingly, claims one, seven, eight, and nine are procedurally barred and otherwise denied pursuant to Section 2254(d).

### B.      *Claim Two*

Petitioner asserts that counsel rendered ineffective assistance by failing to request an *in camera* hearing regarding the admissibility of evidence concerning the alleged sexual contact between the victim and her brother.  In support of this claim, Petitioner argues that he and the victim's mother had observed the victim and her younger brother simulating sexual activity and such evidence could have demonstrated that it was the victim's six-year old brother who caused the scarring in the victim's vagina.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief after an evidentiary hearing pursuant to *Strickland*.  (App. EE at 84-85.)  The state court noted that trial counsel testified that Petitioner told her prior to trial that he observed the

9

victim and her younger brother simulating sex, whereas, Petitioner testified that he told trial counsel that he observed that victim and her brother engaged in a sex act that involved penetration.  *Id*.  The state court found trial counsel's testimony was more credible than Petitioner's testimony.  *Id.*   The state court concluded, therefore, that trial counsel made a reasonable strategic decision not to request an *in camera* hearing on the admissibility of the prior sexual contact between the victim and her brother.  *Id*.

Petitioner has not shown that the denial of this claim is contrary to, or an unreasonable application of, *Strickland*.  During the trial, trial counsel questioned Petitioner regarding whether he had reprimanded the victim and her brother for doing something improper.  (App. A at 190.)  When asked to explain what he observed, the prosecution objected.  *Id*.  A bench conference was held at which defense counsel advised the court that Petitioner would testify that he observed the victim and her brother simulating sex.  *Id*. at 191.  The trial judge concluded that this evidence was purely speculative as to whether such conduct caused the injury to the victim and thus was not admissible under state law.  *Id*.  Petitioner subsequently alleged in his amended Rule 3.850 motion that he observed the victim and her brother engaged in sexual activity that included penetration of the victim by her brother's penis and fingers.  (App. Y.)

At the Rule 3.850 evidentiary hearing, defense counsel testified that Petitioner never told her that he had observed the victim's brother penetrate the victim's vagina, but instead only told her that he observed them simulating sex with their clothes on.  (App. FF at 15.)  In contrast, Petitioner maintained that he told defense counsel that he observed the brother

penetrate the victim.  *Id*. at 6.  The state court made a factual determination that counsel's testimony was more credible.  Petitioner has not demonstrated by clear and convincing evidence that the state court's factual determination is incorrect.  Counsel, therefore, was not deficient for failing to request an *in camera* hearing to determine the admissibility of testimony unknown to her.  Moreover, Petitioner has not established that a reasonable probability exists that the trial court would have admitted this testimony if such a hearing had been requested.  Accordingly, claim two is denied pursuant to Section 2254(d).

C.      *Claim Three*

Petitioner contends that counsel rendered ineffective assistance by failing to properly cross-examine Nurse Deborah Scott concerning her testimony that there was scarring in and around the victim's vagina.  In support of this contention, Petitioner maintains that Nurse Scott's opinion that the fissures were scars was not based on any corroborative medical evidence.  Petitioner further asserts that counsel rendered ineffective assistance by failing to obtain a medical expert to review Nurse Scott's findings, failing to require definitions be provided for the female genitalia, and failing to question Nurse Scott regarding whether the penetration required for the scarring would have been painful.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief pursuant to *Strickland*.  (App. V at 3-4.)  The state court reasoned that Nurse Scott had examined approximately 5,000 children for physical and sexual abuse and was an expert. *Id*. at 4.  The court noted that Petitioner's argument that a medical doctor would have refuted Nurse Scott's findings was speculative.  *Id*.  The court further reasoned that defense

counsel elicited responses from Nurse Scott on cross-examination which were favorable to the defense, namely that the scarring could have been caused by blunt or sharp trauma and not solely by digital penetration. *Id.* The state court concluded that Petitioner had not demonstrated that prejudice resulted from counsel's failure to further question Nurse Scott or call a medical expert. *Id.*

Petitioner has failed to show that the state court's denial of this claim is either contrary to, or an unreasonable application of, *Strickland*. Nurse Scott testified that she had examined approximately 5,000 children for abuse and had testified numerous times. Nurse Scott described in detail the parts of the vagina and explained concisely where she had observed the scarring inside the victim's vagina. Defense counsel thoroughly questioned Nurse Scott about her observations, and Nurse Scott conceded that the scarring was not definitively caused by digital penetration. Petitioner's contention that a doctor would have refuted Nurse Scott's testimony is purely speculation. Petitioner has not offered any evidence establishing that a doctor would have contradicted Nurse Scott's testimony. Furthermore, even assuming Nurse Scott's testimony had been further challenged, the jury still heard the victim's testimony that Petitioner placed his fingers in her vagina. In sum, Petitioner has not established deficient performance nor has he shown that prejudice resulted therefrom. Accordingly, claim three is denied pursuant to Section 2254(d).

### C.   *Claim Four*

Petitioner asserts that counsel rendered ineffective assistance by failing to request a definition of vagina in the jury instructions and by failing to request an instruction on the

lesser-included offense of lewd and lascivious molestation.   In support of this claim, Petitioner argues that the jury could have determined that no penetration occurred if the definition of vagina had been provided.

Petitioner raised this claim in his Rule 3.850 motion.   The state court denied relief pursuant to *Strickland*.  (App. V at 4-5.)   The state court reasoned that Nurse Scott gave a detailed explanation of the anatomy and terminology of the vagina.   *Id*. at 5.   The state court further determined that no ambiguity existed concerning what constituted penetration of the vagina.   *Id*.   The state court also reasoned that the jury found the evidence was sufficient to convict Petitioner of the offense of sexual battery and a reasonable probability did not exist that the jury would have violated its oath by finding Petitioner guilty of the lesser-included offense of lewd and lascivious molestation.   *Id.*

In considering a claim of ineffective assistance of counsel based on the failure to request a lesser included offense instruction, the Eleventh Circuit Court of Appeals held that the petitioner's:

> assertions that he would have been convicted of the lesser included offense, as opposed to the greater offense, are pure speculation - speculation both that the state trial court would have decided to instruct the jury on the lesser included offense and that the jury, if instructed on the lesser included offense, would have convicted on it instead of the higher offense.  That speculation is insufficient to undermine our confidence in the outcome of his trial.

*Harris v. Crosby*, 151 F. App'x 736, 738 (11th Cir. 2005); *see also Bell v. McNeil*, 353 F. App'x 281, 286 (11th Cir. 2009) (concluding the petitioner failed to demonstrate prejudice pursuant to *Strickland* based on counsel's failure to request an instruction on the lesser-

included offense because the petitioner had "not shown that the jury probably would have convicted him" of the lesser offense had counsel requested the instruction).

As discussed in claim three *supra*, Nurse Scott provided a detailed description of the anatomy of the vagina and explained where the scarring was located inside the vagina. Thus, Petitioner has not demonstrated that prejudice resulted from counsel's failure to request a jury instruction on the definition of vagina.

Additionally, the trial court instructed the jury on two lesser-included offenses, attempted sexual battery and battery. Nevertheless, the jury found Petitioner guilty of the greater offense of sexual battery. Consequently, Petitioner's contention that the jury would have found him guilty of the lesser-included offense of lewd and lascivious molestation is speculative. Petitioner, therefore, has not demonstrated that a reasonable probability exists that the outcome of his trial would have been different had counsel requested an instruction for lewd and lascivious molestation. Accordingly, claim four is denied pursuant to Section 2254(d).

### D.   *Claim Five*

Petitioner maintains that counsel rendered ineffective assistance by failing to call Odella Julien ("Julien") as an alibi witness or to explain Julien's unavailability to the jury. In support of this claim, Petitioner contends that counsel mentioned Julien in her opening statement but did not call her as a witness. Petitioner argues that Julien would have testified that (1) on the night of the alleged sexual battery she and Petitioner were sitting on the patio, (2) the victim's mother was jealous, (3) the victim's brother had told her that

14

Petitioner did not commit the offenses, and (4) the victim's mother did not live in the United States in 2000.

Petitioner raised this claim in his Rule 3.850 motion. In denying relief, the state court noted that counsel did not mention Julien in her opening statement. (App. V at 6.) The state court further reasoned that Petitioner testified that Julien left him standing alone outside the apartment approximately fifteen minutes before the victim's mother arrived home. *Id.* The state court determined, therefore, that Petitioner had time to commit the offense before the victim's mother returned home, and he had not shown prejudice that resulted from counsel's failure to call Julien. *Id.*

The state court's determination is supported by the record. Defense counsel did not mention Julien in the opening statement. Furthermore, Petitioner testified that he was alone outside the apartment for approximately fifteen minutes before the victim's mother arrived home. Thus, if Julien would have testified that she was with Petitioner outside his apartment on the night of the offense, there still would have been time for Petitioner to commit the offense. Likewise, Petitioner testified that he and the victim's family had been living in Orlando for two years prior to the offenses, which occurred in 2002. The victim's mother, therefore, must have been in the United States in 2000. Julien's purported testimony concerning statements made by the victim's brother would have been hearsay. Finally, testimony that the victim's mother was jealous of Petitioner and Julien so as to show motive for the victim's mother to lie would have been substantially weakened by evidence that the victim's mother initially did not believe the victim and did not want to

report the offenses.  Finally, the Court notes that the jury acquitted Petitioner of the sexual battery charge premised on penetration of the victim's vagina with Petitioner's penis.  The victim testified that the penile penetration occurred on the night Petitioner contends he was with Julien.  Therefore, Petitioner has not demonstrated that a reasonable probability exists that the outcome of his trial would have been different had counsel called Julien to testify.

### E.      Claim Six

Petitioner asserts that counsel rendered ineffective assistance by failing to file a motion for statement of particulars.  Petitioner maintains that a statement of particulars would have narrowed the dates when the offenses occurred and shown that he could not have committed the offenses because the victim was not in the United States in 2000.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief pursuant to *Strickland.*  (App. V at 7-8.)  The state court noted that Petitioner testified that as of December 8, 2002, he had been living with the victim for two years.  *Id*. at 7.  Thus, there was evidence that the victim had been in the United States since some time in 2000. *Id..*  The state court further reasoned that the victim testified that Petitioner placed his fingers in her vagina many times before December 8, 2002.  *Id*. at 8.  The state court concluded, therefore, that a reasonable probability did not exist that the outcome of the trial would have been different if counsel had filed a motion for a statement of particulars.  *Id*.


Pursuant to Florida law, "if a defendant believes that the information 'fails to inform [him] of the particulars of the offense sufficient to enable him to prepare his defense,' the

court 'upon motion, shall order the prosecuting attorney to furnish a statement of particulars.'" *Carver v. State*, 560 So. 2d 258, 260 (Fla. 1st DCA 1990) (quoting Fla. R. Crim. P. 3.140(n)). However, the State is not "obliged to narrow the period to a specific date where it was not known." *Anderson v. Sec'y, Dep't of Corr.*, No. 8:09-cv-2083-T17EAJ, 2010 WL 4259448, *16 (M.D. Fla. 2010) (citing *Dell'Orfano v. State*, 616 So. 2d 33, 35 (Fla. 1993), for the proposition that "'[c]ommon sense dictates that admitted wrongdoing should not be shielded from prosecution merely because the State is unable to provide greater specificity in an information or indictment'; the court held a trial court, upon proper motion, was required to dismiss an information involving a lengthy period of time [30 months] if the state could not show clearly and convincingly that it had exhausted all reasonable means of narrowing the time frame further").

In the instant case, the count for which Petitioner was convicted was alleged to have occurred between October 23, 2000, and December 9, 2002. *See* App. C at 65. Assuming counsel was deficient for failing to request a statement of particulars, Petitioner has not demonstrated that he was prejudiced as a result. The victim, who was between the ages of six and eight at the time the offense occurred, testified at trial that Petitioner placed his fingers in her vagina more than five times prior to December 8, 2002. There is nothing in the record that indicates that the victim could provide more specific information regarding the dates of these incidents. Thus, assuming a motion for statement of particulars had been filed, there is no basis on which to conclude it would have been granted, it would have resulted in dismissal of the information, or it would have resulted in a not guilty verdict.

*See, e.g., Anderson*, 2010 WL 4259448, at *17 (concluding that the petitioner failed to demonstrate prejudice based on counsel's failure to file motion for statement of particulars because he failed to show that "the trial court would have been obliged to require the state to narrow the offense window under state law"). Accordingly, claim six is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).  When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934.  However, a  prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Brian Victory is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 8th day of April, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-1 4/8
Counsel of Record
Brian Victory